UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVANTE RHOMES, <br> *Plaintiff*, | ) <br> ) <br> ) | 3:21-CV-01360 (KAD) |
| v. | ) <br> ) | |
| MECCA AUTO, LLC, <br> *Defendant*. | ) <br> ) | AUGUST 2, 2022 |

**MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (ECF NO. 10)**

Kari A. Dooley, United States District Judge:

This action arises out of Plaintiff Davante Rhomes' purchase and financing of a used vehicle from Defendant Mecca Auto, LLC ("Mecca"). Plaintiff brought this action alleging violations of the Truth in Lending Act ("TILA"), the Retail Installment Sales Financing Act ("RISFA"), the Connecticut Unfair Trade Practices Act ("CUTPA"), Article 9 of the Uniform Commercial Code ("UCC"), the Connecticut Creditor Collections Practices Act ("CCCPA"), and a breach of the implied warranty of merchantability under the Magnuson-Moss Warranty Act ("MMWA"). Pending before the Court is Plaintiff's Motion for Default Judgment pursuant to Fed. R. Civ. P. 55(b). *See* ECF No. 10. For the reasons set forth below, Plaintiff's motion is GRANTED and the Clerk of Court is directed to enter Judgment in favor of Plaintiff in accordance with the following.

**Facts**[1]

The allegations in the Complaint, which are deemed admitted, are as follows. On January 16, 2021, Plaintiff agreed to purchase a 2006 Subaru Legacy ("the vehicle") from Defendant for a

---

[1] The facts derive from a combination of the allegations in the Complaint, ECF No. 1, and the testimony and exhibits offered at the hearing on Plaintiff's Motion for Default Judgment, held on June 30, 2022.

1

cash price of $4,218.84. Compl. ¶ 7–8. Plaintiff paid a $1,000 down payment and Mecca provided the financing for the remaining balance.[2] *Id.* at ¶ 9–10. Mecca prepared a "promisory [sic] note" ("Promissory Note" or the "Note") stating that Plaintiff would pay the remaining balance of $3,218.84 through weekly installments of $175 for 18 weeks.[3] *Id.* at ¶ 11. This was the only document prepared or provided to the Plaintiff in connection with both the sale and financing of the vehicle. The Promissory Note did not disclose the finance charge as an annual percentage rate ("APR") but rather as a $300 handwritten charge in the itemization of the total purchase price for the vehicle. *Id.* at ¶ 12. The itemized purchase price also included a handwritten "doc" charge of $499 despite Mecca not disclosing any dealer conveyance fee on its advertisement. The "doc" charge also failed to state that it is negotiable. *Id*. at ¶ 13. The Promissory Note did not disclose the terms of credit, including the amount financed, the APR, or an accurate schedule of payments. *Id*. at ¶ 14. Defendant claimed a lien on the vehicle and informed Plaintiff—without his consent— that it installed a global positioning system ("GPS") on the vehicle without any retail installment contract or granting of a security interest. *Id*. at ¶ 16–17.

Soon after Plaintiff took ownership of the vehicle, the check engine and oil lights illuminated. *Id*. at 18. Plaintiff brought the vehicle back to Defendant for repairs, which it refused to perform. *Id*. at 19. Due to the unreliability of the vehicle, Plaintiff drove it infrequently. *Id*. at ¶ 20. By July 2021, Plaintiff had difficulty making his payments to Defendant. As a result, Defendant revised the Promissory Note to require 39 additional payments at $125 per week. At that rate, the Plaintiff would have paid more than $1,600 above the original remaining balance. *Id*. at ¶ 21.

---

[2] Mecca financed the transaction using a "buy here pay here" method, which meant it would not assign the debt to any third-party financial institution. *Id.* at ¶ 10.
[3] The Court notes that $175 multiplied by 18 is $3,150, which does not equal the amount of Plaintiff's remaining balance as noted on the Promissory Note, $3,218.84.

Defendant threatened Plaintiff with repossession of the vehicle, as well as "surcharges" and interest and late fees. *Id*. at ¶ 22–23.

On or about September 21, 2021, the vehicle broke down. Plaintiff informed Defendant in writing on September 21, 2021 that he was revoking his acceptance of the vehicle and/or rescinding the transaction. *Id*. at ¶ 25. Plaintiff offered Defendant the opportunity to retrieve the vehicle from his residence, which it did not do. *Id*. at ¶ 26, 29. Despite demands from Plaintiff for Defendant to return all sums paid on the Promissory Note, Defendant has refused to return any money to Plaintiff. *Id*. at ¶ 28–29.

On October 14, 2021, Plaintiff brought this action alleging violations of TILA, RISFA, and CUTPA, as the Promissory Note fails to include statutorily required terms such as an appropriate finance charge, APR, the amount financed, and an accurate schedule of payments, among others. Plaintiff also alleges a violation of the UCC, as Defendant engaged in electronic self-help through the installation of a GPS device without Plaintiff's consent or proper disclosures. Additionally, Plaintiff alleges a violation of CUTPA and the CCCPA for Defendant's threats to repossess the vehicle without any legal basis to do so. Plaintiff attests that because of Defendant's conduct, he suffered ascertainable losses and damages. Plaintiff specifically seeks TILA statutory damages, CUTPA punitive damages, a return of all amounts paid to Defendant, loss of use damages, attorneys' fees, and an order rescinding the contract under RISFA.[4]

Although served on October 28, 2021, Defendant failed to appear, answer, or otherwise defend the action. Therefore, Plaintiff moved for entry of default against Defendant, which the

---

[4] The Court notes that although the UCC and the MMWA create additional bases upon which Mecca might be liable to Plaintiff, the remedies afforded for such violations are duplicative of those sought in connection with the other causes of action alleged. *See* 15 U.S.C. § 2310(d)(2) ("If a consumer finally prevails in any action brought…he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended))"; *see also* Conn. Gen. Stat. § 42a-0-609(d)(4) ("a debtor may recover direct and incidental damages caused by wrongful use of electronic self-help."). As such, the Court does not separately address these claims.

Court granted on May 17, 2022. On May 13, 2022, Plaintiff filed the instant Motion for Default Judgment. And on June 30, 2022, the Court held an evidentiary hearing on the motion. At the hearing, the Court heard testimony from Plaintiff and received various exhibits into the record.

**Standard of Review**

"It is well established that a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the sound judicial discretion of the court." *Cablevision of S. Conn. Ltd. Partnership v. Smith*, 141 F.Supp.2d 277, 281 (D. Conn. 2001) (internal quotation marks omitted) (citing *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). In civil cases, however, "where a party fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party[.]" *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984). In making this determination and evaluating the allegations asserted against a defendant, the Court may "deem[ ] all the well-pleaded allegations in the pleadings to be admitted." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997). Here, the Court also has the benefit of Plaintiff's testimony as well as the exhibits he submitted, which further establish both liability and damages. In determining damages, "[t]he outer bounds of recovery allowable are…measured by the principle of proximate cause. The default judgment d[oes] not give plaintiff a blank check to recover from defendant any losses it had ever suffered from whatever source. It could only recover those damages arising from the acts and injuries pleaded[.]" *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158–59 (2d Cir. 1992) (internal brackets and citation omitted).

As discussed below, Plaintiff has sufficiently alleged facts supporting his claims and has produced evidence of damages to the Court's satisfaction. Accordingly, Defendant's failure to appear, respond, or otherwise defend the instant action warrants a default judgment for Plaintiff.

**Discussion**

*TILA*

TILA seeks to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit[.]" 15 U.S.C. § 1601(a). Thus, "TILA provides for a private right of action for damages where a creditor fails to make disclosures required by the Act." *Sylvia v. Kensington Auto Serv., Inc.*, No. 3:20-CV-01622 (KAD), 2021 WL 2634502, at *2 (D. Conn. June 26, 2021) (internal quotation marks omitted).

Upon consideration of Plaintiff's allegations, testimony, and the Promissory Note[5], it is manifest that Defendant did not provide Plaintiff with many of the disclosures mandated by TILA. *See* 15 U.S.C. § 1638(a). For example, the Note does not include the proper period of payments scheduled for Plaintiff to repay his obligation.[6] *See id.* § 1638(a)(6) (requiring disclosure of "due dates or period of payments scheduled to repay the total of payments"). Further, the Note omits any information regarding the consequences of a late payment. *See id.* § 1638(a)(10) (requiring disclosure of "[a]ny dollar charge or percentage amount which may be imposed by a creditor solely on account of a late payment"). Moreover, the Note also lacks any statement with respect to default, the right to accelerate the maturity of debt, or prepayment rebates or penalties. *See id.* § 1638(a)(12) (requiring "[a] statement that the consumer should refer to the appropriate contract document for any information such document provides about nonpayment, default, the right to accelerate the maturity of debt, and prepayment rebates and penalties"). To the extent that the Note might arguably include the alleged missing disclosures, or sufficient information from which the

---

[5] *See* ECF No. 10-2, Pl. Ex. 1.
[6] The Note states, "The payments are going to be $175 every week starting on 01/27/2021 for a period of 18 weeks." The dollar amount, start date, and number of weeks were all handwritten, with an inscrutable marking written above "18 weeks." *See id.*

5

missing disclosures might be gleaned, the TILA requirements are not "clearly and conspicuously in writing," as required. 12 C.F.R. § 226.17(a)(1). Thus, the Court finds that Plaintiff has established a TILA violation.

*RISFA*

"RISFA sets forth the conditions governing retail installment sales contracts under Connecticut law." *Sylvia*, 2021 WL 2634502, at *2. It provides that "[e]very retail installment contract shall be in writing, shall contain all the agreements of the parties and shall be completed as to all essential provisions prior to the signing of the contract by the retail buyer." Conn. Gen. Stat. § 36a-771(a). It also "requires sellers to comply with the Connecticut Truth in Lending Act, which in turn incorporates the requirements of the federal TILA and Regulation Z." *Sylvia*, 2021 WL 2634502, at *2; *see* Conn. Gen. Stat. § 36a-771(b). Thus, insofar as Defendant violated TILA, it also violated RISFA. And given the vague and very limited content of the Note, the only document generated memorializing the sale and financing of the vehicle, it strains credulity to even consider the document a "retail installment contract" at all. Indeed, Plaintiff's allegation that he was not provided with any retail installment contract is deemed admitted.

*CUTPA*

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). It also provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action…to recover actual damages." *Id*. § 42-110g(a). A CUTPA claim consists of three basic elements: (1) an ascertainable loss of money or property (2) that was caused by an unfair method of competition or an unfair or deceptive act (3) that

occurred in the conduct of trade or commerce. *Cenatiempo v. Bank of Am., N.A.*, 333 Conn. 769, 788–90 (2019). To determine when a practice is unfair, the Connecticut Supreme Court has adopted the so-called "cigarette rule" promulgated by the Federal Trade Commission. *Id*. at 790. Under this rule, courts must consider:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers[,] competitors or other businesspersons[.]

*Id*. (alterations omitted; citation omitted; internal quotation marks omitted). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three…Thus a violation of CUTPA may be established by showing either an actual deceptive practice…or a practice amounting to a violation of public policy." *Id*. (citation omitted; footnote omitted; internal quotation marks omitted).

Here, Plaintiff argues that Defendant's TILA violation satisfies the public policy criterion for an "unfair" practice. Indeed, "[a] violation of TILA offends the public policy embodied in TILA, and several courts have thus held that a TILA violation constitutes a CUTPA violation." *Muñoz v. JLO Auto., Inc.*, No. 3:19-CV-01793 (MPS), 2020 WL 6607789, at *3 (D. Conn. Nov. 12, 2020); *see also Hernandez v. Saybrook Buick GMC, Inc.*, 505 F. Supp. 3d 93, 112 (D. Conn. 2020) (recognizing that, under Conn. Agency Reg. § 42-110b-28(b)(23), it is a *per se* CUTPA violation for a car dealership to fail to comply with a state or federal law concerning the sale of motor vehicles). As Plaintiff has established that he suffered an ascertainable loss and that the TILA violation occurred in the conduct of trade or commerce, the Court finds that Plaintiff has established a CUTPA violation based upon the TILA violation.

*Damages and Other Relief*

*TILA Statutory Damages*

Under TILA, "any creditor who fails to comply with any requirement…with respect to any person is liable to such person in an amount equal to the sum of (1) any actual damage sustained by such person as a result of the failure; (2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction…except that the liability under this subparagraph shall not be less than $200 nor greater than $2,000[.]" 15 U.S.C. § 1640(a). Here, Plaintiff asserts that he is entitled to double the disclosed finance charge, which as reflected on the Note, was $300. Plaintiff argues that twice the amount of the finance charge is well within the maximum statutory damages. The Court agrees that Plaintiff is entitled to these damages under TILA and awards Plaintiff $600 in statutory damages.

*Rescission*

"Rescission, simply stated, is the unmaking of a contract." *Metcalfe v. Talarski*, 213 Conn. 145, 153 (1989) (internal quotation marks and citation omitted). "It is a renouncement of the contract and any property obtained pursuant to the contract, and places the parties, as nearly as possible, in the same situation as existed just prior to the execution of the contract." *Id*. (internal quotation marks and citation omitted). "[R]escission of the contract [is] an implied remedy under RISFA." *See Barco Auto Leasing Corp. v. House*, 202 Conn. 106, 113 (1987). "[A]s a condition precedent to rescission, the parties to a contract must be restored to their original position as nearly as possible." *Id*. "In restoring the parties to their respective positions prior to the contract, courts generally order the seller to refund the amounts paid by the buyer for the goods and the buyer to return the goods to the seller." *Id*.

As a remedy for Defendant's RISFA violation, Plaintiff is entitled to a rescission of the contract and the return of all payments made to Defendant, to include the $1,000 down payment and the $1,730 of installment payments he made before renouncing the contract. The Court also finds the contract rescinded and that there is no further indebtedness to Defendant thereunder. *See Metcalfe*, 213 Conn. at 159 ("[T]he effect of a rescission is to extinguish the contract and to annihilate it so effectively that in contemplation of law it has never had any existence, even for the purpose of being broken. Accordingly, it has been said that a lawful rescission of an agreement puts an end to it for all purposes[.]" (internal quotation marks and citation omitted)). The Defendant is entitled to retrieve the vehicle from the Plaintiff at its own cost and expense.

*Loss of Use*

Under CUTPA, any person who suffers an ascertainable loss of money or property may bring an action to recover actual damages.[7] *See* Conn. Gen. Stat. § 42-110g. And the court may, in its discretion, award such equitable relief as it deems necessary or proper. *See id.* For the loss of use of a vehicle, a plaintiff may recover for the intangible loss during a certain period without having to produce any financial proof of that loss. *See Anderson v. Gengral Motors*, 141 Conn. 688, 692 (1954) (finding that roughly half the price of a similar vehicle rental was a reasonable amount of loss of use damages); *KLM, Inc. v. United Tech. Corp.*, 610 F.2d 1052, 1055–56 (2d Cir. 1979) (explaining that no proof of financial loss is necessary because the damages are for the loss of the *right to use* rather than the loss of actual use) (emphasis added). And the amount of compensation for intangible loss is "fair and reasonable compensation, according to the circumstances of each case." *Ramos v. Goauto Centers of Meriden, LLC*, No. 3:15-cv-00314 (JAM), 2016 WL 7424119, at *2 (D. Conn. Dec. 23, 2016). Here, Plaintiff seeks $3,364 for his

---

[7] The amounts paid for the vehicle, which have already been awarded as damages under the RISFA claim, would also be identifiable damages under CUTPA.

loss of use of the vehicle. Plaintiff calculated this amount by taking the amount it would have cost, had he been able to afford it, to rent a similar car for the period he could not drive the vehicle and then discounting this amount by 75%. This request is supported by the evidentiary record and the Court finds it to be fair and reasonable. The Plaintiff is awarded $3,364 in loss of use damages.

*Punitive Damages*

Under CUTPA, "[t]he court may, in its discretion, award punitive damages[.]" Conn. Gen. Stat. § 42-110g(a). "In order to award punitive…damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights[.]" *Ulbrich v. Groth*, 310 Conn. 375, 446 (2013) (internal quotation marks and citation omitted). "While the CUTPA statutes do not provide a method for determining punitive damages, courts generally award punitive damages in amounts equal to actual damages or multiples of the actual damages." *Perkins v. Colonial Cemeteries, Inc*., 53 Conn. App. 646, 649 (1999). "[T]he award should serve the broad remedial goals of eliminating or discouraging unfair methods of competition and unfair or deceptive acts or practices." *Societa Bario E. Derivati v. Kaystone Chem., Inc.*, No. 5:90-CV-599 (EBB), 1998 WL 182563, at *10 (D. Conn. Apr. 15, 1998) (internal quotation marks omitted).

Here, Plaintiff argues that he is entitled to punitive damages because Defendant's conduct was egregious and therefore warrants such an award to deter future misconduct. The Court agrees with Plaintiff that the circumstances warrant an award of punitive damages. It does not appear to the Court that the Defendant made even a passing effort to comply with its statutory obligations. Indeed, the Note is not only silent on many of the statutorily required provisions, but affirmatively misrepresents several salient terms of the agreed upon transaction. In executing the Note and failing to generate *any* other document memorializing the sale or financing of the transaction, Defendant blatantly disregarded the requirements of TILA and RISFA, each designed to protect

unsuspecting consumers like Plaintiff. The evidence, therefore, "reveal[s] a reckless indifference to the rights of others or an intentional and wanton violation of those rights[.]" *Ulbrich*, 310 Conn. at 446 (internal quotation marks and citation omitted). Plaintiff seeks a punitive damages award of $5,000, which the Court finds reasonable on the facts of this case.

*Attorneys' Fees*

Plaintiff is also entitled to an award of attorneys' fees pursuant to both TILA and CUTPA. *See* 15 U.S.C. § 1640(a)(3) (noting that the creditor is liable for "a reasonable attorney's fee as determined by the court"); Conn. Gen. Stat. § 42-110g(d) ("the court may award…reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery"). To determine reasonable attorneys' fees, courts multiply "a reasonable hourly rate by the number of reasonably expended hours." *See Bergerson v. New York State Office of Mental Health, Cent. New York Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011). "It is plaintiffs' burden to establish with satisfactory evidence—in addition to the attorney's own affidavits—why their requested fee is appropriate…Also, [t]o determine whether a requested hourly rate is reasonable, courts may take judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Sylvia*, 2021 WL 2634502, at *5 (internal quotation marks and citation omitted).

Here, Plaintiff seeks $12,500 in attorneys' fees. The attorneys' fees are based on hourly rates of $475 for Attorney Daniel S. Blinn; $350 for former associate Attorney Brendan L. Mahoney; $150 for Paralegal Lori Minor; and $95 for Legal Assistants Dora Fernandez and Nicole Reynolds.[8] The hourly rates that Plaintiff seeks for Attorney Blinn and Attorney Mahoney are

---

[8] Previously, in *Stevenson v. Riverside Motorcars, LLC*, No. 3:21-CV-0320 (KAD), 2021 WL 5051667, at *6 (D. Conn. Nov. 1, 2021), the Court declined to award the rates sought herein, as most of the work performed in that case pre-dated the Court's earlier decision in *Sylvia*, in which the Court approved a lower hourly rate for Attorney Blinn.

equivalent to the hourly rates that a court in this district has recently found to be reasonable for similar services rendered. *See Senquiz v. Hartford Auto Group, Inc.,* Civil No. 3:20 cv 01304 (JBA), 22 WL 2037581, at *1 (D. Conn. June 3, 2022) (awarding attorneys' fees based on hourly rates of $475 for Attorney Blinn and $350 for Attorney Mahoney). The Court agrees that Attorney Blinn's skill, experience, and reputation as a consumer advocate justify the rate sought. Similarly, Attorney Mahoney's experience and status as a senior associate justify the rates sought. Based on these hourly rates and the number of reasonably expended hours, the Court awards attorneys' fees in the amount of $12,500.

**Conclusion**

Plaintiff's motion for default judgment is GRANTED. The Court awards compensatory damages in the amount of $2,730; statutory damages in the amount of $600; punitive damages in the amount of $5,000; loss of use damages in the amount of $3,364; and attorneys' fees in the amount of $12,500 for a total award of $24,194. Judgment shall enter against Defendant and in favor of Plaintiff in the amount of $24,194. The contract for the purchase of the vehicle is hereby rescinded. Post judgment interest shall accrue as permitted by law. The Clerk of Court is directed to prepare the Judgment and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of August 2022.

                                                 */s/ Kari A. Dooley*
                                                 KARI A. DOOLEY
                                                 UNITED STATES DISTRICT JUDGE

---

*See* 2021 WL 2634592, at *5. In the current case, however, almost all the work performed occurred after Attorney Blinn's firmwide rates increased in September of 2021.